Michael WETHINGTON, Appellant,

v.

Billy & Ginger MANN, Appellees.

No. 09–04–478 CV.

Court of Appeals of Texas, Beaumont.

Submitted on April 28, 2005.

Decided Aug. 11, 2005.

William S. Helfand, Kevin D. Jewell, David E. Jenkins, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for appellant.

Brett E. Dressler, Weitinger & Dressler, Houston, for appellees.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

This appeal arises from a suit filed by Billy and Ginger Mann for the death of their dog against Michael Wethington. Wethington, an officer of the Stagecoach Police Department, filed a motion for summary judgment on the grounds of official immunity. The trial court denied the motion and Wethington appealed pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005).

We first address the order at issue on appeal. The trial court's order purports to grant "Defendant's Motion for Summary Judgment *as to recovery for mental anguish and loss of love, society, and companionship; and as to punitive/exemplary*

*damages* and ORDERS that the Plaintiff's claims are dismissed with prejudice. *DENIES as to liability.*"[1] The parties treat the order as a grant of Wethington's motion, in part, and a denial of Wethington's claim of immunity from suit. Pursuant to the order, the only claim for damages remaining in the suit is for the fair market value of the dog, a Great Dane. However, any challenge to the trial court's dismissal of the other claims for damages is not appealable at this stage.[2] Therefore, we only address whether the trial court erred in denying Wethington's claim of official immunity.

The standard of review for denial of a summary judgment is the same as for the granting of a summary judgment. *Powell v. Foxall,* 65 S.W.3d 756, 758 (Tex.App.-Beaumont 2001, no pet). The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, evidence favorable to the non-movant is taken as true. *Id.* at 548–49. Every reasonable inference in favor of the non-movant is indulged and any doubts are resolved in its favor. *Id.* at 549. The movant must either disprove at least one element of each of plaintiff's theories of recovery or conclusively establish each essential element of an affirmative defense. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). If the movant conclusively proves all essential elements of his defense, the burden shifts to the non-movant. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989). The non-movant must then answer that affirmative defense for

summary judgment purposes. *Broussard v. Tyler County Hosp.,* 831 S.W.2d 584, 586 (Tex.App.-Beaumont 1992, no writ).

Wethington's summary judgment evidence consists of his affidavit, the affidavit of Corporal David Miller, Plaintiffs' Original Petition, and classified advertisements for the sale of Great Dane puppies. In response, the Manns' summary judgment evidence is Wethington's deposition and the affidavit of Harold Warren. In that order, we consider the evidence pertinent to the issue of official immunity.

## SUMMARY JUDGMENT EVIDENCE

### *Wethington's Affidavit*

Officer Wethington responded to a call from Montgomery County Sheriff's Dispatch regarding a dog attack on a child at the Mann residence. Wethington arrived at the scene and determined it was necessary to locate the dog in order to secure the scene. When he stepped into the backyard, the dog charged him, "growling and snarling, with its head lowered." Officer Wethington feared the dog was going to attack and determined he could not outrun the dog. He pointed his gun in the dog's direction and discharged his weapon. The dog shuddered, walked back to the fence and collapsed.

Wethington averred it is part of his duties as a police officer to respond to such calls and that he was acting as a police officer when called to the scene. Further, Wethington stated that as the result of his training and experience as a police officer, he determined there were no reasonable alternatives to ensure his safety and the safety of others and concluded it was necessary to shoot the dog.

---

1. The italicized language is handwritten.

2. Absent statutory authorization, only final judgments are appealable. *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998).

## Miller's Affidavit

David Miller, a corporal in the Montgomery County Sheriff's Department, was called to the scene shortly after Officer Wethington was forced to shoot the dog. Corporal Miller averred that Wethington acted reasonably in response to the emergency call and to the circumstances presented when Wethington arrived as the first unit on the scene. Miller said Officer Wethington was both prudent and reasonable to search for the dog to determine whether it still posed a risk. Officer Miller stated standard police training requires an officer to attempt to secure the scene so as to make it safe to care for any victims, conduct an investigation, and protect others expected to arrive, such as paramedics and backup officers.

Miller further stated that Officer Wethington's use of his weapon when the dog charged was consistent with the reaction of a reasonably prudent police officer in the same urgent circumstances. According to Miller, it was reasonable for Wethington to conclude the dog, having just attacked a child, would attack him and possibly others. Corporal Miller averred there were no plausible and reasonable alternative courses of action and that the action Officer Wethington took was the most appropriate response under the circumstances. Miller stated that given the seriousness of the emergency call, the severity of the injuries inflicted on the child by the dog, the unknown whereabouts of the dog, the apparent imminent attack of the large dog, and the probability the dog could attack others, Wethington's actions, including shooting the dog, were reasonable. Corporal Miller concluded that a reasonably prudent officer under the same or similar circumstances could find Officer Wethington's actions were justified.

## Wethington's Deposition

Officer Wethington testified he had not been provided any training in handling dangerous animals and the incident in question was his first experience with one. Wethington said he received a call from dispatch and replied he would be en route. When Wethington reached Timbergreen Drive, dispatch called back and informed him the location was not in the city of Stagecoach. Wethington advised dispatch that "if they would like, I would check by and advise anyway." Dispatch agreed. Wethington testified the Stagecoach Police Department has an agency agreement with the Sheriff's office and will respond to their calls if asked.

When Wethington arrived at the scene, he was only aware that a child had been hurt by a dog. Upon arrival, a woman opened a side door and "yelled '911. My baby is hurt.'" Wethington called dispatch and rushed inside the house. Once inside, the woman shut and locked the door behind him, rushed him through the door to a side room, and shut and locked that door behind them. Inside the room, Wethington saw blood on the floor and a little girl crying. The girl had a large gash across her leg, bite marks, and puncture wounds on her arm. She was severely bleeding. Wethington applied a sock to the leg wound and asked the woman about other children and herself. Wethington testified at that time he felt he needed to find the animal because paramedics and other deputies would be arriving. He asked the woman if the dog was in the house. She screamed and said hysterically that she did not know. Wethington stepped out the door and the woman locked the door behind him. He drew his weapon and went toward the center of the house. Wethington looked toward the back of the house and noticed a pair of French doors; one was ajar approximately

one inch. He walked toward the door, opened it, and stepped onto the patio.

Approaching the end of the patio, Wethington saw a little brown dog come from inside the kennels; the dog was barking at him. He then saw the Great Dane come around the back of the kennels and out into the yard. The dog started toward Wethington, dropped its head, growled, and kept coming. Wethington said he could not outrun the dog, so he "knocked the safety off" his weapon, pointed it in the animal's direction, and fired. Wethington approximated his distance from the animal at twenty feet or closer. The dog stopped, "shuddered real hard," turned toward the fence, walked back to the fence, and dropped over. Wethington checked the dog and did not notice any breathing.

He went back in the house and knocked on the bedroom door to be let in. The child appeared to be going into shock and Wethington "was hollering for the dispatcher to hurry up and get the ambulance there." He tried to ask some questions but the woman was really incoherent. He noticed her shoe had been pulled off, she had grass stains on her pants, and had what she claimed was a tooth mark across one of her arms.

### Warren's Affidavit

Harold Warren is a retired peace officer. In his affidavit he stated that in his opinion Officer Wethington did not act in good faith in that no reasonably prudent official, under the circumstances present in this case, could have believed his conduct was justified. Warren stated that Wethington knew the location was outside his jurisdiction and that no reasonable officer would have believed that he had jurisdiction to respond to the emergency call outside of his geographic jurisdiction. Further, Warren noted that when Wethington entered the house, he found the family secure in a closed room, and he left that secure room to search for the dog. Warren states Wethington's decision to enter the backyard is the foundation of his opinion that he did not act in good faith because arriving officers and paramedics "could not have reasonably been expected to approach the scene from the backyard" and "the dog posed no danger to the public if it was in the backyard." Further, Warren avers the risk of investigating the backyard was imminent and great and the officer could not have expected the dog to react any differently. "Thus, by going into the backyard with his gun drawn, the officer placed himself into a situation where he would have no choice but to use deadly force." Warren asserts no reasonably prudent officer would place himself in such a situation unless necessary and it was not necessary, or even prudent, for the officer to enter the backyard "because he could have confirmed the dog's location from the relative safety of the backdoor or the fenced driveway." According to Warren, because the officer suspected the dog was in the backyard, the only reasonable course of action was to confirm the dog's location from another location and then let animal control deal with the situation.

### ELEMENTS OF DEFENSE OF OFFICIAL IMMUNITY

Official immunity is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). To be entitled to a summary judgment, Wethington had to establish all the essential elements of that defense. *See id.* "The elements of the defense of official immunity are (1) the performance of a discretionary function (2) in good faith (3) within the scope of the employee's authority." *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994).

### Discretionary Function

Regarding the first element, an act is not discretionary, i.e., is ministerial,

if it requires obedience to orders or the performance of a duty to which the actor has no choice. *See Chambers,* 883 S.W.2d at 654. An act is discretionary if it involves personal deliberation, decision, and judgment. *Id.* Investigating and acting on gathered facts is a discretionary function. *See Fowler v. Szostek,* 905 S.W.2d 336, 342 (Tex.App.-Houston [1st Dist.] 1995, no writ). Wethington was investigating a report of a dog attack on a child. His actions at the scene were based on the facts gathered. These actions required deliberation, decision, and exercise of judgment. We therefore find the summary judgment evidence shows Wethington was carrying out a discretionary function.

### Good Faith

Good faith, the second element, requires this court to look to whether a reasonably prudent officer, under the same or similar circumstances, could have believed his or her conduct was justified based on the information the officer possessed at the time. *See Telthorster v. Tennell,* 92 S.W.3d 457, 465 (Tex.2002). The officer need not prove all reasonably prudent officers would have engaged in the same conduct, only that a reasonably prudent officer might have reached the same decision under the same circumstances. *Id.* That an officer was negligent will not defeat good faith; it is an objective test that inquires what a reasonable officer could have believed. *Id.*

Officer Wethington's affidavit and Corporal Miller's affidavit provide summary judgment proof of good faith. The facts sworn to in those affidavits are such that a reasonably prudent officer could have believed Wethington's conduct was justified.

Offered as controverting evidence is Warren's affidavit. Warren complains mainly of Wethington's decision to enter the backyard, and asserts it was unnecessary and posed too great a risk. Warren's complaints are well-founded only if Wethington knew the dog was in the backyard and that the dog was secured. There is no summary judgment evidence that Wethington knew where the dog was or that the dog could not get out of the yard. The evidence shows Wethington knew a dog had attacked a child, a door leading to the backyard was ajar, other officers and paramedics would be arriving at the scene, and the location of the dog was unknown. The record does not establish that no reasonable officer could have believed a search for the dog was justified. Accordingly, we find the summary judgment evidence established Officer Wethington entered the backyard in good faith.

Warren also alleges that because Wethington knew the location was outside his geographical jurisdiction, Wethington could not have believed he had jurisdiction to respond to the emergency call. Wethington's testimony from his deposition clearly shows he believed otherwise. The call Wethington received was from the Montgomery County Sheriff's Office dispatcher. Wethington testified that "if the dispatcher had completely disregarded me, then I would have disregarded the call." Appellees cite no authority, and we are aware of none, holding it is unlawful for a police officer to respond to an emergency call outside his geographical jurisdiction. There is no evidence that a reasonably prudent officer could not have believed responding to the emergency call was justified. Accordingly, we find the summary judgment evidence established Wethington acted in good faith.

### Scope of Authority

The third element, scope of authority, is satisfied if the official is discharging the duties generally assigned to him or her. *See Chambers,* 883 S.W.2d at

658. "The fact that a specific act that forms the basis of the suit may have been wrongly or negligently performed does not take it outside of the scope of authority." *Koerselman v. Rhynard,* 875 S.W.2d 347, 350 (Tex.App.-Corpus Christi 1994, no writ). Officer Wethington's affidavit avers his duties include responding to such calls and that he was acting as a police officer when called to the scene. There is no controverting evidence. Rather, appellees focus on the fact that the Mann's residence is outside Officer Wethington's geographical jurisdiction.

Appellees mistake the scope of authority element. An official acts within the scope of his authority if he is discharging the duties generally assigned to him. *Chambers,* 883 S.W.2d at 658. Here, Officer Wethington was acting within the scope of his authority as an officer of the law, responding to an emergency call. We therefore find the summary judgment evidence established Wethington's actions were within the scope of his authority.

Consequently, the trial court's order denying Wethington's claim of official immunity is reversed and judgment rendered that Billy and Ginger Mann take nothing.

REVERSED AND RENDERED.