**Affirmed in Part and Reversed and Remanded in Part and Opinion filed February 14, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-11-00091-CV

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**DAVID JENKINS, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-13235**

---

## OPINION

Montgomery County Deputy Sheriff David Jenkins sued the City of Houston for injuries he received when he was bitten by a trained police dog owned by the City. In response, the City filed a plea to the jurisdiction and moved for summary judgment, asserting different arguments for governmental immunity in each. In its plea to the jurisdiction, the City argued that because Jenkins sued both the City and one of its employees, the claims against the City were barred under an election-of-remedies statute. In its summary-judgment motion, the City argued that its employee was entitled to official

immunity. The trial court denied the plea to the jurisdiction but granted summary judgment in the City's favor. Both sides have appealed. Because the City failed to establish its entitlement to governmental immunity, we affirm the trial court's denial of the plea to the jurisdiction. But because the City also failed to conclusively establish entitlement to official immunity, we reverse and remand the case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of May 4, 2007, Deputy David Jenkins of the Montgomery County Sheriff's Department was dispatched to Spring, Texas in Harris County in pursuit of two suspects wanted for assaulting a Montgomery County law-enforcement officer. To aid in the search, the Houston Police Department radioed for a "K9"—a unit consisting of an officer trained in dog handling, paired with a dog trained for law-enforcement work. Officer David Thomas was off-duty, but had the City's dog "Rudy" with him while he was working an extra job providing security for a retail parking lot. The dog was trained in searching and detaining suspects, so when Thomas heard the dispatch, he contacted his sergeant, who asked him to respond to the scene.

It was dark when Thomas arrived and learned that one suspect was in custody and the other had been seen running into a wooded area. Thomas gave Rudy commands to begin tracking, and Rudy tracked the suspect through the wooded area toward a house. During the search, Thomas learned that the second suspect had been apprehended and taken into custody. Thomas stopped Rudy, and began walking Rudy back toward the road to return to his vehicle. Rudy was on a 15-foot leash. When Thomas was almost back at the roadway, he saw an officer he knew walking toward him. The two men stopped and shook hands. While the two men were talking, Deputy Jenkins was walking back to the road. Jenkins was just reaching the road between six and ten feet away from Thomas and the dog when the dog attacked Jenkins, biting and holding his left leg behind the knee. Thomas told Jenkins to drop, and after Jenkins did so, Thomas was able to detach the dog's

2

teeth from Jenkins's leg. According to Jenkins, he received about sixteen stitches, and sustained lasting nerve damage.

Jenkins sued Thomas and the City for negligence. Jenkins asserted that the legislature waived governmental immunity as to claims involving the negligent use of tangible personal property under the Texas Tort Claims Act ("TTCA"). He also argued that his claims were not barred by official immunity because Thomas was performing a ministerial rather than a discretionary act when Thomas walked Rudy back to his patrol car.

The City moved to dismiss Jenkins's claims against Thomas based on election of remedies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (West 2005) ("If a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). After the trial court granted the motion, the City filed a plea to the jurisdiction in which it argued that the same election-of-remedies statute also barred Jenkins's claims against it because he had sued Thomas. The City argued because he sued both the City and Thomas, Jenkins's claims against the City were barred. *See id.* § 101.106(b).

In addition to the jurisdictional plea, Jenkins and the City filed cross-motions for summary judgment. The City moved for traditional summary judgment on its affirmative defense of governmental immunity. The City argued that because Thomas would be entitled to official immunity from Jenkins's claims, the City was entitled to governmental immunity. Jenkins moved for partial summary judgment, and argued that governmental immunity did not apply. The trial court denied the City's plea to the jurisdiction and granted the City's motion for summary judgment.[1] The City appeals the denial of its plea, and Jenkins appeals the summary judgment in the City's favor.

---

[1] Initially, the trial court did not expressly rule on the plea to the jurisdiction, but simply denied Jenkins's motion for partial summary judgment and granted the City's summary-judgment motion.

3

## II. PLEA TO THE JURISDICTION

Because immunity from suit deprives a trial court of jurisdiction, a governmental entity properly asserts immunity in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). When the defendant challenges the plaintiff's pleadings, the trial court determines whether the plaintiff has alleged facts sufficient to demonstrate subject-matter jurisdiction. *Id.* at 226. To make this determination, the court considers the pleader's intent and construes the pleadings liberally in favor of jurisdiction. *Id.* If the factual allegations of the pleadings neither affirmatively demonstrate that the trial court has jurisdiction nor affirmatively demonstrate incurable jurisdictional defects, then the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, the court should sustain the plea and dismiss the suit without allowing the plaintiff an opportunity to amend. *Id.* at 227. Because the existence of jurisdiction is a question of law, we evaluate the trial court's ruling by applying a de novo standard of review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The TTCA provides a limited waiver of immunity for certain suits against governmental units and caps recoverable damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011). Governmental immunity is waived for injuries arising from "a condition or use of tangible personal or real property." *Id.* § 101.021. It is undisputed that a dog is tangible personal property. Thus, Jenkins has pleaded facts bringing his claim within the TTCA's waiver of governmental immunity.

Relying on section 101.106(b) of the TTCA, the City argues that the trial court erred in denying its plea to the jurisdiction. Under the terms of that provision, "The filing of a

---

Although it subsequently granted Jenkins's motion for new trial, the trial court then denied the City's plea to the jurisdiction and granted the City's motion for summary judgment without expressly ruling on Jenkins's summary-judgment motion.

4

suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(b). Because Jenkins sued both the City and Thomas, the employee who was handling the dog that bit Jenkins, his suit is barred "unless the governmental unit consents." As previously discussed, governmental immunity is waived under the TTCA for claims of injury arising from the condition or use of tangible personal property.

Citing *Mission Consolidated Independent School District v. Garcia*,[2] the City argues that to overcome the election-of-remedies provision, governmental consent to suit must be found in an enactment other than the TTCA. This court repeatedly has rejected that view and explained that the consent to suit found within the TTCA is sufficient to waive immunity. *See, e.g.*, *City of Houston v. Cooper*, No. 14-11-00092-CV, 2011 WL 5595559, at *2 (Tex. App.—Houston [14th Dist.] Nov. 17, 2011, pet. filed) (mem. op. on reh'g); *City of Houston v. Johnson*, No. 14-11-00220-CV, 2011 WL 5595716, at *2 (Tex. App.—Houston [14th Dist.] Nov. 17, 2011, pet. filed) (mem. op. on reh'g); *Amadi v. City of Houston*, No. 14-10-01216-CV, 2011 WL 5099184, at *4 (Tex. App.—Houston [14th Dist.] Oct. 27, 2011, pet. filed) (op. on reh'g en banc). For the reasons stated in those opinions, we overrule the City's sole issue and affirm the trial court's denial of its plea to the jurisdiction.

### III.  SUMMARY JUDGMENT

We review the trial court's grant of a summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.2d 184, 192 (Tex. 2007)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence

---

[2] 253 S.W.3d 653 (Tex. 2008).

favorable to the nonmovant if a reasonable factfinder could do so, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

## A.    The Basis of the City's Assertion of Immunity

A governmental unit is liable for personal injury proximately caused by the negligence of an employee acting within the scope of employment if, *inter alia*, the injury was caused by a condition or use of tangible personal property and "the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). *See also City of Houston v. Davis*, 294 S.W.3d 609, 612–13 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that plaintiff

6

alleged the use of personal property by asserting that officer failed to secure the police dog that bit plaintiff). Through this provision, the legislature has waived a governmental unit's immunity from respondeat superior liability based upon the liability of the governmental unit's employee. *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 654 (Tex. 1995). But the governmental unit, like a private person, is entitled to assert any defenses to liability that its employee possesses. *Id.* Official immunity protects governmental employees from personal liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Thus, if its employee is entitled to official immunity, then the governmental employer's immunity remains intact. *DeWitt*, 904 S.W.2d at 653.

A governmental employee is entitled to official immunity for the good-faith performance of discretionary duties within the scope of the employee's authority. *Clark*, 38 S.W.3d at 580. A discretionary act is one involving "personal deliberation, decision and judgment"; in contrast, actions requiring obedience to orders "or the performance of a duty to which the actor has no choice" are ministerial. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994) (quoting *Rains v. Simpson*, 50 Tex. 495, 501 (1878)). Thus, if the duty is imposed by law, then the performance of the duty is a ministerial act, and there is no official immunity for the failure to perform it. *See Govant v. Houston Cmty. Coll. Sys.*, 72 S.W.3d 69, 74 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Here, the dispute centers on whether Thomas's alleged injury-producing conduct was discretionary or ministerial.

## B.     The Summary-Judgment Record

The City asserted that Thomas was entitled to official immunity, and thus, the City retains its immunity from suit. As the summary-judgment movant, the City bore the burden to establish that Jenkins was injured by Thomas's performance of a discretionary function. But aside from citations and definitions, the City's summary-judgment argument on this point consists only of a reference to an affidavit by Thomas's supervisor, Greg Bisso, and the assertion that Bisso "has attested to the fact that the actions of Officer

Thomas relevant to this case were discretionary." Even if expert testimony could establish that returning a trained police dog to a vehicle or enclosure could be considered discretionary in some circumstances, the affidavit offered here could not do so because it addresses the wrong subjects.

Most of Bisso's affidavit concerns Thomas's "reasonableness" in performing various actions. Reasonableness is relevant when evaluating the good-faith component of official immunity and defining the duty owed to a plaintiff asserting a negligence theory of liability. It has no bearing, however, on the question of whether an act is discretionary.

Bisso made just two statements about discretion, and neither statement addresses the conduct at issue. First, he stated, "It was left up to [Thomas's] discretion on how to conduct a search for suspects, depending on the circumstances involved, within the broad parameters of his training." Jenkins, however, does not allege that he was injured by Thomas's search for suspects. Second, Bisso stated, "It was left up to [Thomas's] discretion as to whether he wished to stop and confer with other law enforcement officers after the suspect(s) had been apprehended and taken into custody, before returning [the dog] Rudy to his vehicle." But Jenkins does not allege that he was injured by Thomas's standing or conversing with other officers.

Jenkins's complaint is that Thomas was performing the ministerial function of "transporting the dog back to the patrol car" and "[f]ail[ed] to keep the dog in question securely restrained when Defendants knew or should have known that it was a danger to persons in close proximity to the animal and in particular to Plaintiff . . . ." Thus, the pertinent question is whether the City has met its burden to establish that Thomas' handling of the dog was discretionary as a matter of law. We conclude that the answer is no.

Here, Thomas's duties were triggered by his possession and custody of a dog that he knew was trained to, among other things, subdue humans by biting them. Moreover, the City's own summary-judgment evidence shows that this was at least the third time the dog bit a police officer. Although the City quotes only the portion of Thomas's deposition in

8

which he stated, "Nine years on the street, [this incident] was the only accidental bite I've had with that dog," Thomas later testified that Rudy had bitten a SWAT officer when, in the interval between different training scenarios, Rudy saw the officer move. Moreover, Thomas testified that Rudy had bitten him for correcting the dog. Both Thomas and the City therefore fall within the following rule expressed in RESTATEMENT OF TORTS § 509 (1938) ("Harm Done by Abnormally Dangerous Domestic Animals") and adopted by the Supreme Court of Texas:[3]

> Except as stated in § 517[4], a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, except trespassers on his land, although he has exercised the utmost care to prevent it from doing the harm.

A dog that has been trained to bite or that has a history of doing so has dangerous propensities abnormal to its class. *See id.*, cmt. f ("The great majority of dogs are harmless and the possession of characteristics dangerous to mankind . . . are properly regarded as abnormal to them."). Thus, there is more than a scintilla of evidence that Rudy is a dangerous domestic animal, and that Thomas was aware of this. *See id.*, cmt. g (explaining that the fact that the dog has even "*attempted* to attack human beings . . . is sufficient to bring its possessor within the rule stated in this Section") (emphasis added); *cf. Sanders v. Brown*, 196 Ga. App. 644, 646, 396 S.E.2d 908, 910 (1990) (explaining that

---

[3] *See Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex. 1974).

[4] Under section 517, this rule does not apply to a person who had a duty to take possession or custody of the wild or dangerous animal unless that person "fail[s] to exercise care commensurate with the dangers involved." *See id.*, § 517, cmt. b. This is not a case in which an animal has been taken into custody as the evidence of a crime (as in animal-cruelty cases) or for the protection of the public (as when a dog who has attacked someone is seized for testing or destruction). *Cf. Watson v. State*, 337 S.W.3d 347, 352 (Tex. App.—Eastland 2011, pet. granted) (describing the seizure of some dogs and destruction of others involved in a mauling death, and the comparison of the dogs' dental measurements to the decedent's wounds); *Wethington v. Mann*, 172 S.W.3d 146, 150–51 (Tex. App.—Beaumont 2005, no pet.) (stating that officer who responded to a report of a dog attack on a child was performing discretionary duties in searching for and shooting dog).

9

when a dog has been trained to attack inanimate objects, it is reasonable to infer that the dog's owner knew that the dog was dangerous).

The City argues that authorities concerning dangerous propensities do not apply because they form the basis for strict liability and Jenkins failed to raise any strict-liability arguments in the trial court. Although Jenkins did not allege that the City was liable simply for keeping the animal, he could and did plead that Thomas was negligent in handling the animal, and the same dangerous propensities that support strict liability also are a factor in determining foreseeability in negligent-handling cases. *Trujillo v. Carrasco*, 318 S.W.3d 455, 460 (Tex. App.—El Paso 2010, no pet.); *accord*, *State v. Taylor*, 322 S.W.3d 702, 707 (Tex. App.—Texarkana 2010, pet. ref'd) ("Whether the risk of injury from a dog bite is foreseeable depends in part on the owner's actual or constructive knowledge of the vicious propensities of the dog."). *Cf. Dunnings v. Castro*, 881 S.W.2d 559, 562–63 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (explaining that the availability of strict liability simply for keeping a dangerous animal does not preclude negligence as an independent ground of recovery based on the handling of an animal, whether or not the animal has dangerous propensities) (citing 3A C.J.S. *Animals* § 178 (1973)); *see also Marshall v. Ranne*, 511 S.W.2d 255, 259 (Tex. 1974) (explaining that the establishment of a cause of action for strict liability does not preclude a claim for negligent handling). The elements of a claim for common-law negligent handling of an animal are that the defendant owned or possessed the animal and proximately caused the plaintiff's injuries by breaching the duty to exercise reasonable care to prevent the animal from injuring others. *Williams v. Sable*, No. 14-09-00806-CV, 2011 WL 238288, at *3 (Tex. App.—Houston [14th Dist.] Jan. 25, 2011, no pet.) (mem. op.) (setting forth, in a dog-bite case, the elements for "common-law negligent handling of an animal"). Jenkins alleged each of these elements, and Rudy's training and history are evidence that Thomas and the City knew of the dog's dangerous propensities, triggering a duty of care. *See Labaj v. VanHouten*, 322 S.W.3d 416, 421 (Tex. App.—Amarillo 2010, pet. denied) ("[A] plaintiff satisfies his burden of proof by establishing that the owner had actual or

constructive notice of facts that would put an ordinary person on notice that the animal could cause harm and the owner was negligent in preventing such harm.").  The scope of the duty and its non-discretionary nature are illustrated not only by *Marshall* and section 509 of the Restatement, but by enactments such as the "dangerous dog" statutes.  *Cf.* TEX. HEALTH & SAFETY CODE ANN. § 822.041(2) (West 2010) (defining "dangerous dog"); *id.* § 822.042(a) (requiring one who owns or possesses a dangerous dog to "restrain the dangerous dog at all times on a leash in the *immediate control* of a person or in a secure enclosure") (emphasis added).  *See also id.* at § 822.005 (making it a felony for the owner of a dangerous dog to fail to restrain the dog if the dog then makes an unprovoked attack on another person).

## C.     Determining the Nature of a Duty as Discretionary or Ministerial

Because Jenkins alleges that he was injured as a result of a City employee's negligent failure to restrain the dog while transporting it away from the search site when the search was over, official immunity does not apply unless this was a discretionary duty. The City failed to establish conclusively that this was the case.

A duty is "a legally enforceable obligation to conform to a particular standard of conduct."  *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 491 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ denied)).  Thus, a question as to whether a governmental employee was performing a ministerial or a discretionary duty is a question about the employee's conduct.  Rather than focusing on the nature of Thomas's conduct that allegedly caused Jenkins's injuries, the City focuses on the nature of the tangible personal property that was the instrument of harm and attempts to distinguish "police dogs" from other dogs with dangerous propensities.  The City argues that regardless of whether there are laws requiring the restraint of dogs, there are no laws requiring the restraint of "police dogs."  This is rather like saying there are no rules which prescribe how a "police car" must be driven and ignoring that there are rules that govern the driving

11

of cars generally. A "police car" is still a car, though it may be owned by the police department, driven by a police officer, and specially outfitted to assist the officer in the performance of law-enforcement duties. Different rules apply to the operation of a "police car" when it is being used by a governmental employee in the performance of a discretionary act—like pursuing a suspect. Absent such special circumstances, however, an officer driving a car—even a "police car"—is performing a ministerial duty, and his conduct remains subject to the same rules that govern the conduct of private citizens driving privately-owned cars. *See Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (op. on reh'g) ("Absent special circumstances that suggest the officer was performing a discretionary function, such as engaging in a high speed chase, an officer driving a motor vehicle while on non-emergency business is performing a ministerial act.").

In the same way, Rudy is a highly trained and specialized animal, but it is still a dog subject to human control. A private person could purchase the same dog from the same seller[5] and would not be exempt from leash laws or the duty to control the animal simply because the dog has specialized training. And like the handling of a vehicle, different rules apply to the handling of a dog when it is being used by a governmental employee in the performance of a discretionary act—like pursuing a suspect. But as *Gibbons* illustrates, the use of the same tool can be discretionary in some circumstances and ministerial in others. *See id.* An officer can exercise discretion in deciding when and how to use a potentially dangerous tool, and still have a ministerial duty in using the tool under other circumstances..

The Texas Supreme Court has offered guidance in determining whether the conduct at issue is discretionary or ministerial. *See Kassen v. Hatley*, 887 S.W.2d 4, 12 n.8 (Tex.

---

[5] Thomas testified that the City typically buys dogs by providing specifications to and soliciting bids from vendors in the Czech Republic, Germany, or Holland. According to Thomas, dogs can be purchased that are already trained. The dogs are typically about two years old when purchased, and will have learned commands in the language of their country of origin.

1994) (citing RESTATEMENT (SECOND) OF TORTS § 895D, cmt. f). Factors that courts consider include the following:

1. the nature and importance of the function that the employee is performing,

2. the extent to which passing judgment on the exercise of discretion by the employee will amount to passing judgment on the conduct of a coordinate branch of government or an agency thereof,

3. the extent to which the imposition of liability would impair the employee's free exercise of discretion,

4. the extent to which financial responsibility will fall on the employee,

5. the likelihood that harm will result to the public if the employee acts,

6. the nature and seriousness of the type of harm that may be produced, and

7. the availability to the injured party of other remedies and forms of relief.

*Id.*

The city focused on only the first factor. Citing *Wyse v. Department of Public Safety*, 733 S.W.2d 224, 227 (Tex. Civ. App.—Waco 1986, writ ref'd n.r.e.), the City asserts, "Law enforcement officers' duties are usually considered discretionary." The case contains no such statement. Official immunity is not presumed; it is an affirmative defense that must be conclusively proved. *Kassen*, 887 S.W.2d at 9. An act is not "usually considered discretionary" simply because it is performed by a law-enforcement officer, nor has the City identified any basis for its assumption that the majority of law enforcement officers' duties are discretionary. *See id.* at 12 ("The focus must remain upon the facts of the individual case and the underlying policies promoted by official immunity.").

As to "the nature and importance of the function that the employee is performing," if a police officer is using a dog and is engaged in investigating a case, detecting crime, or searching for contraband, fugitives, or missing persons, then the use of the dog would be

13

discretionary. *See, e.g.*, *Chambers*, 883 S.W.2d at 655 (stating that an officer's decision to pursue a suspect is discretionary); *City of Dallas v. Brooks*, 349 S.W.3d 219 (Tex. App.—Dallas 2011, no pet.) (holding that officer was entitled to immunity because he was responding to another officer's call for backup when his vehicle struck and killed pedestrian); *Wethington v. Mann*, 172 S.W.3d 146, 150–51 (Tex. App.—Beaumont 2005, no pet.) (stating that officer who responded to a report of a dog attack on a child was performing discretionary duties in searching for and shooting dog); *City of Coppell v. Waltman*, 997 S.W.2d 633, 637 (Tex. App.—Dallas 1998, pet. denied) (explaining that the manner in which an officer searches an arrestee for contraband is discretionary); *Guerrero v. Tarrant Cnty. Mortician Servs. Co.*, 977 S.W.2d 829 (Tex. App.—Fort Worth 1998, pet. denied) (holding that locating and removing all remains from the scene of death are discretionary functions).

On this record, Thomas identified no governmental concerns that played any role in the decision not to securely restrain Rudy while transporting him away from the search site. *See Kassen*, 887 S.W.2d at 12. Under the circumstances reflected in the record before us, we cannot agree that the City met its burden to establish that Thomas is entitled to official immunity, and thus, that its own immunity remains intact. Because the City failed to prove every element of its governmental-immunity defense as a matter of law, we sustain Jenkins's sole issue and hold that the trial court erred in rendering summary judgment.

## IV. CONCLUSION

Because the City's governmental immunity from Jenkins's claims are waived by the TTCA, we affirm the trial court's denial of the City's plea to the jurisdiction. But because the City failed to establish that Jenkins's injuries arose from its employee's performance of

a discretionary duty, we reverse the summary judgment and remand the case to the trial court.

/s/     Tracy Christopher
        Justice

Panel consists of Chief Justice Hedges, Justice Christopher, and Judge Wise.[6]

---

[6] Hon. Ken. Wise, 334th District Court, Harris County, Texas, sitting by assignment pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2005).