**Affirmed and Majority and Dissenting Opinions filed September 8, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00107-CV

## CITY OF HOUSTON, Appellant

## V.

## RUBEN RODRIGUEZ AND FREDERICK OKON, Appellees

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2020-16518**

## M A J O R I T Y   O P I N I O N

Ruben Rodriguez and Frederick Okon (together, "Appellees") were traveling together in a truck when their vehicle was struck by a police officer engaged in a high-speed pursuit. Appellees sued the City of Houston and the City filed a motion for summary judgment, asserting that immunity barred Appellees' claims. The trial court denied the City's summary judgment motion and the City appealed. For the reasons below, we affirm.

1

## BACKGROUND

In January 2019, Houston Police Department ("HPD") Officers Richard Corral and C. Goodman were assisting HPD Vice officers on a prostitution "sting." As part of this operation, an undercover detective posing as a prostitute agreed to engage in sexual intercourse for money with a male suspect driving a red car. The two planned to meet in a nearby parking lot to complete the transaction. Officers Corral and Goodman were waiting nearby in a marked HPD patrol vehicle when another detective participating in the sting told them an arrest was needed and gave them the suspect's travel direction. Officer Corral drove to the parking lot.

As the officers approached the suspect's vehicle, the suspect drove away. Officer Corral activated his vehicle's emergency lights and siren and pursued the suspect, who did not stop but continued southbound on a Highway 59 service road at a high rate of speed. Officer Goodman informed dispatch of the pursuit and relayed the license plate number of the fleeing vehicle. About three minutes into the chase, dispatch informed the officers that the suspect's vehicle had been reported stolen.

Evading the officers, the suspect drove at high speeds, at one point going the wrong direction on a Beltway 8 service road. After entering and then exiting a car dealership parking lot, the suspect abruptly turned right off the access road and onto a side street. Officer Corral, pursuing closely, attempted to follow. Appellees' truck was stopped at a stop sign on the side street waiting to turn onto the access road. Seeing the truck, Officer Corral attempted to turn wide around the truck by driving past it, over the curb, and then back onto the side street. As he came off the curb to the side street, Officer Corral's patrol car struck Appellees' truck.

Appellees sued the City and sought damages for injuries sustained in the collision. Appellees alleged that the collision was a direct and proximate result of Officer

2

Corral's negligence in several respects pertaining to the use, operation, and control of a motor vehicle, for which the City was vicariously liable.

The City filed a traditional motion for summary judgment challenging the trial court's subject matter jurisdiction. Appellees filed a response and an amended response. The trial court denied the City's summary judgment motion and the City filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

**ANALYSIS**

In its summary judgment motion, the City asserted two bases to support its contention that Appellees' claims are barred by immunity: (1) Officer Corral's official immunity[1]; and (2) the Texas Tort Claim Act's ("TTCA") emergency response exception.[2] We analyze each ground separately, beginning with an overview of the applicable standard of review.

## I.    Standard of Review

We review a summary judgment *de novo*. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable fact finder could do so, and disregarding contrary evidence unless a reasonable fact finder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

---

[1] *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

The party seeking a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). "On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *City of Houston v. Jenkins*, 363 S.W.3d 808, 814 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

## II. Official Immunity

### A. Governing Law

Political subdivisions of the state — including cities — are entitled to immunity from suit under the doctrine of governmental immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Under this doctrine, the City is not liable for the torts of its agents or officers unless there is a constitutional or statutory waiver of immunity. *City of Houston v. Collins*, 515 S.W.3d 467, 472 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Section 101.021 of the TTCA grants a limited waiver of immunity against a "governmental unit" for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and . . . the employee would be personally liable to the claimant according to Texas law[.]" Tex.

4

Civ. Prac. & Rem. Code Ann. § 101.021.  The City is a governmental unit under this statute.  *Id.* § 101.001(3)(B).

Official immunity is an affirmative defense that protects governmental employees from personal liability.  *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Collins*, 515 S.W.3d at 472.  If a governmental employee is entitled to official immunity, then the employee is not "personally liable to the claimant according to Texas law" and section 101.021's limited waiver does not apply to the governmental unit.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Collins*, 515 S.W.3d at 472.

A governmental employee is entitled to official immunity for (1) the performance of discretionary duties, (2) within the scope of the employee's authority, (3) provided the employee acted in good faith.[3]  *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642-43 (Tex. 2015) (per curiam); *Collins*, 515 S.W.3d at 472.  Official immunity is an affirmative defense and the burden is on the movant to conclusively prove each element of the defense.  *Univ. of Houston*, 38 S.W.3d at 580; *Collins*, 515 S.W.3d at 472.  Because we conclude that showing was not made with respect to whether Officer Corral acted in good faith, we need not address the defense's other elements.[4]

---

[3] Our dissenting colleague reasons that, because Appellees' summary judgment response "addressed only the Tort Claims Act's emergency exception and did not respond to the City's official immunity argument, the City was entitled to summary judgment."  Dissenting Op. at p. 7.  We disagree.  "Summary judgments must stand on their own merits."  *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  Therefore, "[t]he nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense."  *Id.*  Because we conclude that showing was not made here, Appellees were not required to respond to the City's official-immunity argument.  *See id.*

[4] However, we note that these other two elements likely are satisfied under the facts of this case.  The undisputed evidence establishes that Officer Corral was an HPD officer acting within the scope of his employment.  *See, e.g.*, *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994) (officers were acting within the scope of their authority when "each officer was on duty, in a squad car, pursuing a suspect").  The evidence also shows that Officer Corral was performing a discretionary duty.  *See, e.g.*, *id.* at 655 ("[t]he decision to pursue a particular suspect will fundamentally involve the officer's discretion").

In a police pursuit or emergency response case, an officer acts in good faith if a reasonably prudent officer under the same or similar circumstances could have believed that the need for the officer's actions outweighed a clear risk of harm to the public from those actions. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002); *Gillespie v. Galveston Cnty. Health Dist.*, 639 S.W.3d 815, 823 (Tex. App.—Houston [14th Dist.] 2021, no pet.). To satisfy this showing, the City need not prove that all reasonably prudent officers would have taken the same actions. *Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc). Rather, "the City must prove conclusively that a reasonably prudent officer, under the same or similar conditions, *might* have reached the same decision." *Id*. (emphasis in original). That an officer may have been negligent will not defeat good faith; the test of good faith does not inquire into "what a reasonable person would have done", but into "what a reasonable officer could have believed." *Telthorster*, 92 S.W.3d at 465; *Gomez*, 587 S.W.3d at 897.

Good faith is measured against a standard of objective legal reasonableness, without regard to the police officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). This determination hinges on how a reasonably prudent officer could have assessed the need to which he was responding versus the risks of his course of action, based on his perception of the facts at the time of the event. *Gomez*, 587 S.W.3d at 897-98.

In the context of an emergency response, "need" is determined by factors such as: (1) the seriousness of the crime or accident to which the officer is responding; (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and (3) what alternative courses of action, if any, are available to achieve a comparable result. *Id*. at 898. The "risk" aspect refers to the countervailing public safety concerns like: (1) the nature and severity of the harm the officer's actions

6

could cause (including injuries to bystanders); (2) the likelihood that any harm would occur; and (3) whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

To warrant summary judgment on official immunity, the defendant's proof must sufficiently address these factors. *Id.* Once the defendant produces competent evidence of good faith, the defense is established unless the plaintiff shows that no reasonable person in the officer's position could have thought the facts justified the officer's actions. *Collins*, 515 S.W.3d at 473; *see also Gomez*, 587 S.W.3d at 898 ("Only when it has been determined that the governmental unit met this burden [to establish good faith] does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith.").

## B.     Evidence

In his affidavit included with the City's summary judgment motion, Officer Corral described the events that transpired during the pursuit:

4.      . . . Officers were informed by vice undercover officers that the suspect attempted to pick up a female vice undercover officer for sex for money. My partner and I were attempting to conduct a traffic stop for prostitution arrest. As we approached the suspect, he began to leave the parking lot, which required immediate response on our part. In a split-second decision, Officer Goodman and I decided to pursue the suspect, and activated emergency lights and siren. The suspect did not stop and instead fled out of the parking lot onto Ponderosa Ln. then heading southbound on the HWY 59 south service road at a high rate of speed. Officer Goodman relayed the information over the air and informed dispatch of our vehicle pursuit and gave the license plate for the red Mercedes.

5.      Officer Goodman called the chase over the radio so that I could focus on driving as safely as possible during the pursuit. Calling the chase over the radio is important for our safety as well as that of other motorists. I was trying to stay close enough to the

suspect that he could not get away, but keep enough distance to avoid a collision with the suspect, who was driving very erratically. Because it was January, it was already dark outside. The weather was clear and roads were dry. Because it was a Saturday, there were not rush-hour conditions on the freeway, and the traffic was light to medium. The suspect was traveling at a high rate of speed, weaving in-and-out of traffic. At one point, the suspect attempted a u-turn in a u-turn lane underneath hwy. 59. Rather than completing that u-turn, he then made a right turn down the one-way feeder, briefly traveling opposite the flow of traffic. After ensuring there was no oncoming traffic, I followed the suspect as he then turned northbound on the service road to Beltway 8. He then u-turned again, speeding southbound on the northbound service road to Beltway 8 for approximately 10-15 seconds before pulling into the parking lot of a Subaru dealership and looped around the lot.

6.  Approximately 3 minutes into the pursuit, dispatch relayed that the vehicle had been reported stolen. At that point, we knew that the suspect had committed two felonies and a misdemeanor: theft of a motor vehicle, and evading officers with a motor vehicle, and solicitation of prostitution. He had also been driving in an exceedingly dangerous manner, risking a head-on collision by driving the wrong direction down the northbound service road to Beltway 8. However, because the suspect had not been identified, we lacked sufficient information to discontinue the pursuit and arrest the suspect at another time. And because the vehicle was stolen, we would not be able to track down the suspect through vehicle records.

7.  The suspect attempted to leave the Subaru dealership to turn right back onto the northbound Beltway 8 service road. Another vehicle was trying to exit the Subaru dealership at the same time. The suspect was able to exit the driveway before the other vehicle, but I got stuck behind the vehicle. I paused before turning right onto the service road and blew my air horn repeatedly so that the other vehicle in the driveway and the other vehicles on the service road would yield to my emergency vehicle. Once I observed the vehicles on the service road stop, I proceeded to turn right onto the service road. All this time, my emergency lights and siren were still activated.

8

8.     The suspect made a sudden right turn onto the next street after the Subaru dealership, which was Forum West Dr.  As I attempted to turn east on Forum West Dr., I observed a black truck traveling on Forum West Dr.  I attempted to avoid striking the truck, I then hit the curb due to the brakes not working.  Then my cruiser struck the bed of the truck.[5]  Officer Goodman informed dispatch of the accident.  Officers also informed dispatch that the suspect fled east on Forum West Dr.  Although the suspect was not caught, units assisting on the call recovered the stolen vehicle.  The total pursuit lasted less than 10 minutes.

9.     It is my opinion that my actions in pursuing the fleeing suspect in a stolen vehicle who attempted to solicit sex from an uncover [sic] officer were both reasonable and proper under the circumstances.  I considered both the risk of harm to others from the suspect[']s dangerous driving as well as risk of harm to other drivers from my driving in pursuit.  I believe that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that my actions were justified based on my perception of the facts at the time and that the need to immediately apprehend the evading suspect driving a stolen vehicle after attempting to solicit sex from an undercover officer outweighed my minimal risk of harm to others from my own driving.

The City also submitted an affidavit from HPD Sergeant Kelly Li, Jr., who had been employed as an HPD officer for more than 13 years and had "been involved in dozens of high-speed chases."  Sergeant Li's affidavit recounts a version of events similar to those detailed by Officer Corral.

Continuing on, Sergeant Li states that his opinions in the affidavit are based on his skill, knowledge, experience, training, and education as a police officer; his conversations with Officer Corral; his review of Officer Corral's body camera footage; and his evaluation of the events and circumstances of the collision.  Sergeant Li states

---

[5] In their live pleading, Appellees alleged that Rodriguez's truck was stopped at a stop sign when Officer Corral attempted the right turn onto Forum West Road and struck Rodriguez's truck. These allegations are not disputed and, for purposes of this appeal, we accept them as true.

that Officer Corral "was reacting to an emergency situation" which "involved split-second decision-making." Sergeant Li opines that Officer Corral's actions were "justified and reasonable" in light of the need to pursue the suspect and the risk of harm to other drivers. Ultimately, Sergeant Li concludes that "another reasonably prudent law enforcement officer, including [him]self, under the same or similar circumstances could have believed that the need to pursue the fleeing suspect in a stolen vehicle who attempted to solicit sex from an undercover officer outweighed any minimal risk of harm to others."

Unlike Officer Corral's affidavit, Sergeant Li's affidavit does not mention that the brakes on Officer Corral's car were "not working" or how this factor affected his risks versus needs analysis.

## C. Application

Considering the City's evidence in the light most favorable to Appellees, we conclude the City did not conclusively prove the element of good faith as necessary to warrant summary judgment on its official immunity affirmative defense. *See Univ. of Houston*, 38 S.W.3d at 580; *Collins*, 515 S.W.3d at 472.

Our decision relies primarily on the facts recounted in Officer Corral's affidavit. Describing the "need" for the high-speed pursuit, Officer Corral points to the following: the suspect was driving erratically at a high rate of speed; the suspect had committed several offenses, including theft of a motor vehicle, evading officers with a motor vehicle, and solicitation of prostitution; and the suspect had not been identified and the vehicle had been stolen, both of which would hinder attempts to arrest the suspect at another time.

With respect to the "risks" of his decision to engage in the high-speed pursuit, Officer Corral recounts that: it was dark outside; the weather was clear; the roads were

10

dry; traffic was light to medium; his vehicle's emergency lights and siren were activated; and he blew his air horn "repeatedly" to alert other vehicles. However, describing the moments before he crashed into Appellees' truck while attempting to turn onto Forum West Drive, Officer Corral stated that he "attempted to avoid striking the truck" and "then hit the curb *due to the brakes not working*." (emphasis added).

Aside from his observation that his brakes were "not working" at the moment of his collision, Officer Corral's affidavit does not elaborate on the condition of his vehicle's brakes at any relevant time. Officer Corral did not state when he became aware of this condition or the extent to which the brakes' condition impeded his ability to slow down his vehicle or come to a stop at any time before colliding with Appellees' truck. Other than stating that the condition of his vehicle's brakes caused him to "hit the curb," Officer Corral did not provide any further explanation regarding how his brakes' deficient condition contributed to his driving, his decision-making, or the cause of the collision with Appellees' truck.

As we explained above, conclusively establishing good faith depends on satisfying the needs-versus-risks assessment. *See Gomez*, 587 S.W.3d at 897-98; *see also City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *6 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.) (to conclusively prove good faith, "a governmental defendant's proof must sufficiently address these need/risk factors"). But here, without additional evidence regarding the vehicle's brakes or their role in Officer Corral's decision-making or his driving, that showing cannot be made. Merely stating that a vehicle's brakes were "not working" does not sufficiently address the risks attendant to a high-speed pursuit under these circumstances.[6] Therefore, based on this evidence, the City did not establish that a reasonably prudent officer would have

---

[6] *See PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 306 (Tex. 2019) ("Correctly using the brakes is perhaps the most important part of the safe operation of a multi-ton steel object.").

believed the need for his actions outweighed the attendant risks under the circumstances. *See Telthorster*, 92 S.W.3d at 465; *see also, e.g.*, *City of Brazoria, Tex. v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *5 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (the City did not conclusively establish good faith because "Officer Dayton and the City's experts failed to address how the need and risk factors were affected by the building blocking Officer Dayton's view").

Moreover, construing Officer Corral's affidavit in the light most favorable to Appellees, there is a fact question concerning when the officer knew or should have known that his brakes were not working and this fact question precluded the trial court from granting the City's motion for summary judgment. *See, e.g.*, *Gomez*, 587 S.W.3d at 902-03.[7] According to Officer Corral, he pursued the suspect while the suspect was driving "at a high rate of speed"; this pursuit continued over several different roadways, including the Highway 59 service road, the Beltway 8 service road, and a dealership parking lot. Officer Corral's affidavit states that he made several turns during the course of the pursuit.

By driving a vehicle with brakes that "were not working", countervailing public safety concerns rose to a significant level and suggested that (1) vehicles and pedestrians traveling on Forum West Drive were at risk of significant harm from being struck by Officer Corral's vehicle; (2) the likelihood of harm was high, given that Officer Corral was engaged in a high-speed pursuit while driving a vehicle with brakes that "were not working"; and (3) this risk would be clear to a reasonably prudent officer. *See id*. at 898.

---

[7] Our dissenting colleague takes issue with this conclusion without addressing the fact that Appellees prevailed below and that we are required to view the facts in the light most favorable to them. *See Mack Trucks, Inc*., 206 S.W.3d at 582. Instead of honoring this clearly established standard, our colleague suggests we should conclude (without evidence) that Officer Corral neither knew nor should have known his brakes were not working at any time prior to his collision with Appellees. We believe such a conclusion without any supporting evidence both ignores clearly established precedents and amounts to (in the words of our dissenting colleague) "rank speculation". Dissenting Op. at 3.

Assessing this situation, a reasonably prudent police officer would not have believed that the need to which he was responding outweighed the risks of his course of action. *See id*. at 897-98.

Therefore, the City failed to conclusively prove that Officer Corral acted in good faith when he undertook the course of action that led to the collision with Appellees' truck. *See Univ. of Houston*, 38 S.W.3d at 580; *Collins*, 515 S.W.3d at 472. The trial court did not err by denying the City's summary judgment on official immunity.

We overrule the City's first issue.

## III. Emergency Response Exception

### A. Governing Law

The TTCA also lists specific circumstances under which a waiver of immunity does not apply. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055; *City of San Antonio v. Hartman*, 201 S.W.3d 667, 671-72 (Tex. 2006). Under the emergency response exception, a governmental entity's immunity is not waived for:

> a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see also Gomez*, 587 S.W.3d at 902.

Under this provision, a governmental employee responding to an emergency situation retains immunity from suit except for actions taken with conscious indifference or reckless disregard for the safety of others. *Gillespie*, 639 S.W.3d at 819. "Thus, the claimant must show that the operator of the emergency vehicle committed acts or omissions that the driver knew or should have known posed a high degree of risk of

13

serious injury or knew the relevant facts but did not care about the result." *Id*. at 819-20 (internal quotations omitted).

## B. Application

Here, the summary judgment evidence outlined above raises an issue of fact as to whether Officer Corral acted recklessly before his collision with Appellees' truck.

Viewed in the light most favorable to the nonmovants, the evidence shows that Officer Corral tried completing his turn onto Forum West Drive despite being aware that Appellees' truck was stopped at the Forum West Drive intersection. Because there is a question of fact concerning whether Officer Corral knew or should have known that his brakes "were not working" at this time, his course of action posed a high degree of risk of serious injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see also, e.g.*, *Gomez*, 587 S.W.3d at 902-03 (question of fact precluded summary judgment on emergency response exception when evidence showed that the officer "was aware of the rainy weather and wet streets, but he did not reduce his speed below the posted speed limit" and did "not maintain visual contact with the road as he approached the intersection"); *Green v. Alford*, 274 S.W.3d 5, 29 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (concluding that firefighter's failure to wear required corrective lenses and decision not to use siren were factors supporting finding that firefighter was reckless).

Accordingly, the evidence raises an issue of fact as to whether Officer Corral acted recklessly. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848. Therefore, the trial court did not err by denying the City's motion for summary judgment on the TTCA's emergency response exception.

We overrule the City's second issue.

## CONCLUSION

We affirm the trial court's February 9, 2021 order denying the City's traditional motion for summary judgment.

/s/    Meagan Hassan
        Justice

Panel consists of Justices Jewell, Bourliot, and Hassan (Jewell, J., dissenting).