

# NUMBER 13-21-00414-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF CORPUS CHRISTI,                                            Appellant,

v.

GINA RIOS AND YSABEL
MARTINEZ, AS NEXT FRIEND
TO E.M.,                                                          Appellees.

On appeal from the County Court at Law No. 4
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Memorandum Opinion by Justice Peña**

Appellees Gina Rios and Ysabel Martinez as next friend to E.M. filed a negligence

suit against appellant the City of Corpus Christi (City) relating to a traffic accident involving

a stolen Corpus Christi Police Department (CCPD) vehicle. The City filed a plea to the jurisdiction arguing that it was protected by governmental immunity from appellees' suit, which the trial court denied. In three issues, the City argues that its immunity was not waived because: (1) appellees' claims did not arise from the City's operation or use of a motor vehicle as required for a waiver under the Texas Tort Claims Act (TTCA), *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1); (2) the City's officers were entitled to official immunity; and (3) appellees did not assert a valid waiver of immunity for their claims that the City's officers failed to properly handcuff and supervise the arrestee who commandeered the CCPD vehicle. We reverse and render.

## I.    BACKGROUND[1]

CCPD Officer Armando Vasquez responded to a report of a theft in progress at a CVS pharmacy in Corpus Christi, Texas. CCPD officers arrested the suspect, later identified as Alonso Sandoval III, after he fled the store on foot. Officer Vasquez handcuffed Sandoval with his hands behind his back, placed him in the backseat of his patrol vehicle, and restrained him with a seat belt. As Officer Vasquez was standing outside of the vehicle talking to another officer, Sandoval removed his seatbelt and slid his cuffed hands from behind his back, underneath his feet, to the front of his body.[2] Officer Vasquez then reentered the vehicle and drove back to CVS to finish his investigation. Officer Vasquez did not see that Sandoval was now unbuckled with his cuffed hands in the front of his body. Upon his arrival at CVS, Officer Vasquez instructed fellow officer Graciela Luna-Garcia to monitor Sandoval while he was inside the store.

---

[1] The following facts are derived from the jurisdictional record. The facts are undisputed, except where otherwise noted.

[2] These events were captured on the vehicle's in-car camera.

2

Officer Vasquez left his key in the ignition so that the air conditioner would continue to run while Sandoval was in the back seat. The patrol vehicle's rear doors could not be opened from the inside, and a plexiglass divider was located between the front and rear seats.

As requested, Officer Luna-Garcia monitored Sandoval from her nearby patrol vehicle, which was parked directly behind Officer Vasquez's unit. A short time later, Officer Luna-Garcia observed Sandoval moving around the back seat area. She approached the vehicle, opened the front driver side door, and saw that Sandoval had kicked out the plexiglass divider and was trying to access the front seat. Officer Luna-Garcia radioed for help while attempting to push Sandoval back into the rear seat. However, Sandoval overpowered her and gained access to the driver seat. Sandoval kicked Officer Luna-Garcia away from the vehicle and drove away. Sandoval disregarded a red light at a nearby intersection and collided with appellees' vehicle, causing appellees to suffer personal injuries.

Appellees filed suit against the City alleging that their injuries were due to the CCPD officers' negligence. Appellees alleged that the City's governmental immunity from suit was waived by the TTCA because their injuries arose from the operation or use of a motor-driven vehicle. *See id*. The City answered the suit and filed a plea to the jurisdiction. In the plea, the City argued that the trial court lacked subject-matter jurisdiction because no waiver of immunity applied. Specifically, the City argued that the officers' use of the vehicle as a holding cell did not constitute the operation or use of a motor vehicle as contemplated by the TTCA. The City further maintained that there was no causal nexus between the officers' alleged negligent use of the vehicle and appellees' injuries because Sandoval's theft of the vehicle was not foreseeable, nor was it the actual cause of the

3

resulting accident. Finally, the City argued that it was immune from vicarious liability for the officers' actions because they were protected by official immunity. *See City of San Antonio v. Riojas*, 640 S.W.3d 534, 537 (Tex. 2022) ("If [an] employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity under [Section 101.021(1)]." (quoting *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995) (alterations in original))).

The City attached the following pertinent evidence to its plea: (1) CCPD Officers Vasquez and Luna-Garcia's depositions; (2) CCPD Officers George Alvarez, Richard Olden, and Donald Moore's affidavits; and (3) Albert Rodriguez's expert opinion report. The City argued that the testimony of the CCPD officers and Rodriguez's expert report established each element of the official immunity defense. *See id.* at 537–38 ("Official immunity is an affirmative defense that inures to all governmental employees who perform discretionary functions in good faith and within their authority." (cleaned up)). In his report, Rodriguez, an expert in law enforcement training, stated that the plexiglass barrier in Officer Vasquez's patrol vehicle was designed to keep a detainee contained in the back seat. Rodriguez further explained that the vehicle's rear passenger doors could not be opened from inside the vehicle. He stated that the back seat was equipped with a seat and shoulder belt system to secure the detainee. Rodriguez opined that, in responding to a report of theft and arresting the suspect, Officers Vasquez and Luna-Garcia were acting "within the parameters of the duties and responsibilities law enforcement officers are assigned to perform."

Rodriguez explained that Officer Vasquez was performing discretionary functions in securing, transporting, and monitoring Sandoval. Specifically, Rodriguez stated that

4

"[w]hen and how often to monitor a detainee in the back seat, while in transport, is a discretionary law enforcement function" and that "[a]ny reasonable and well-trained law enforcement officer could have reasonably believed Sandoval was adequately secured." Rodriguez opined that "[a]ny reasonable law enforcement officer could have believed that there was no special need to continuously monitor Sandoval, versus checking vehicular and pedestrian traffic while driving." Rodriguez emphasized that "the rear seat . . . is specifically designed to secure detainees with the special[ly] designed seat belts" and "doors [that] cannot be opened from the inside." Rodriguez explained that "[i]t is a common practice for officers to leave patrol units running for the purposes of providing detainees with appropriate environmental temperatures" and that "[a]ny prudent law enforcement officer could have believed that there was no reason to suspect that Sandoval would attempt to escape[] or succeed in escaping" given the secure nature of the rear seat compartment.

Rodriguez stated that "Officer Luna-Garcia was required to use her judgment and discretion on how to monitor Sandoval." He further stated that Officer Luna-Garcia properly monitored Sandoval as shown by her immediate response after observing Sandoval moving from side to side. Rodriguez explained that she was able to catch Sandoval "in the act" of trying to escape, and her actions in trying to stop him "were consistent with the actions of a reasonable and well-trained law enforcement officer." Rodriguez summarized:

> Sandoval was handcuffed, the handcuffs were double locked, he was seat belted in, placed in the rear seat of the patrol unit that would not allow a detainee to open the door from inside, the patrol unit contained a plexiglass safety barrier that separated the front area of the patrol unit, the back seat was designed to contain detainees, and Sandoval was monitored by Officer Luna-Garcia. Officer Luna-Garcia monitored Sandoval to the degree that

5

she noticed his movement within the patrol unit and caught him before he made any physical attempt to put his body through the plexiglass barrier. Based on the numerous procedures employed by Officers Vasquez and Luna-Garcia, no reasonable law enforcement officer could have anticipated Sandoval's unlawful actions.

Officer Alvarez testified that he assisted in arresting Sandoval. He explained that law enforcement officers frequently return to the site of the criminal offense to continue an investigation while the arrestee is secured in the back seat of the patrol vehicle. Officer Alvarez also testified that he often leaves the patrol vehicle running when he exits his patrol car to provide air-conditioning or heat to a detainee. Officer Alvarez explained that he will often ask a fellow officer to monitor an arrestee for him if he is required to walk away from his police vehicle.

Officer Olden, who investigated the collision, testified "that the decisions and actions of the police officers [involved] were reasonable judgment calls, and in keeping with my own training and experience as a Senior Officer with the CCPD." Officer Olden testified that he has engaged in the same practices as Officer Vasquez with respect to leaving his patrol unit running with an arrestee in the rear seat.

Officer Moore, the captain of CCPD's training division, testified similarly to Officers Alvarez and Olden. Officer Moore further explained:

> In view of the temperatures reached and the general climate of the City of Corpus Christi throughout most of the year, it is an exercise of common sense that individuals kept in a police vehicle's cage must have adequate ventilation. It is precisely because an arrestee does **_not_** have access to the vehicle's controls, cannot open the backseat windows or the doors—that an officer may decide to leave the engine running. Upon information and belief, there is no written policy expressly authorizing or prohibiting such action(s), but I am aware that it is a common practice amongst the rank of CCPD officers, and I opine that it is an accepted practice often mandated by the exercise of good judgment and common sense.

Officers Alvarez and Olden were unaware of any prior incident where a detained suspect kicked out the plexiglass barrier to gain access to the front seat of a CCPD police vehicle.

Appellees filed a response to the City's plea to the jurisdiction, arguing that the City's immunity was waived because Officer Vasquez's failure to secure his patrol vehicle for safe nonoperational use constituted "the final and essential act of operating a motor vehicle." Appellees argued that there was a fact issue as to whether this failure caused appellees' injuries. Appellees further argued that Officers Vasquez and Luna-Garcia were not entitled to official immunity because they were performing a ministerial task rather than a discretionary one and that they were not acting in good faith. Appellees attached the following pertinent evidence to their response: (1) CCPD officers' depositions; (2) the City's expert Rodriguez's deposition; (3) backseat camera footage from Officer Vasquez's patrol unit; (4) CCPD policy; and (5) the report of appellees' expert, Dan Montgomery.

Appellees cited CCPD policy provisions requiring officers to handcuff prisoners with their hands behind them and to operate vehicles carefully and prudently. Montgomery, a police-practices expert, opined that Officers Vasquez and Luna-Garcia did not act "in concert with generally accepted police practices" with respect to their supervision of Sandoval. Montgomery further stated that "[r]easonable police officers would not have performed in that manner." Montgomery explained that the officers "failed to take the necessary steps to adequately control the actions of [Sandoval]." He specifically cited the officers' failure to monitor Sandoval and leaving him "unattended," thereby failing to observe the removal of his seat belt and placement of his handcuffs to the front of his body. Montgomery opined that Officer Luna-Garcia's failure to immediately remove the keys from the ignition upon arrival at Officer Vasquez's patrol car and her

7

later failure to employ her Taser as Sandoval was maneuvering through the plexiglass opening were tactical choices that were "not in concert with generally accepted police practices." However, Montgomery acknowledged that Officer Luna-Garcia attempted to stop Sandoval through "physical hands-on efforts."

After a hearing, the trial court denied the plea to the jurisdiction. The City now appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.    OFFICIAL IMMUNITY

Because it is dispositive, we first address the City's second issue, in which it argues that its officers are entitled to official immunity.

## A.    Standard of Review & Applicable Law

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (explaining that a plea to the jurisdiction may challenge the

8

pleadings, the existence of jurisdictional facts, or both). This is true even when the jurisdictional issue intertwines with the merits of the case. *Town of Shady Shores*, 590 S.W.3d at 550.

When jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018). We must take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve any doubts in the nonmovant's favor, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 771; *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Miranda*, 133 S.W.3d at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228.

Governmental immunity deprives a trial court of jurisdiction over lawsuits in which a political subdivision has been sued unless immunity is waived by the Legislature. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). The TTCA provides a waiver of immunity for an employee's acts of negligence arising out of the operation or use of a motor vehicle if "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). However, "[i]f the employee is protected from liability by official immunity, the employee is not personally liable to the claimant, and the government retains its immunity under [the TTCA]." *DeWitt*, 904 S.W.2d at 653 (first citing *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994) (per curiam); and then citing *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993));

9

*see Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015) (per curiam) ("Official immunity is an affirmative defense that protects a governmental employee from personal liability and, in doing so, preserves a governmental employer's sovereign immunity from suit for vicarious liability.").

"[O]fficial immunity is designed to protect public officials from being forced to defend their decisions that were reasonable when made, but upon which hindsight has cast a negative light." *Telthorster v. Tennell*, 92 S.W.3d 457, 463 (Tex. 2002). "Nowhere else in public service is official immunity more appropriate or necessary than in police work. In their routine work, police officers must be free to make split-second judgments . . . based on their experience and training, without fear of personal liability." *Id.* (quoting *Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex. 1992) (Cornyn, J., concurring)) (alterations omitted). A governmental employee is entitled to official immunity if he (1) performs a discretionary duty, (2) in good faith, (3) within the scope of the employee's authority. *Bonilla*, 481 S.W.3d at 642–43. Official immunity is an affirmative defense; therefore, the City bears the burden of proving each element. *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

"An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). "A discretionary act is one involving 'personal deliberation, decision and judgment'; in contrast, actions requiring obedience to orders 'or the performance of a duty to which the actor has no choice' are ministerial." *City of Houston v. Jenkins*, 363 S.W.3d 808, 814 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (quoting *Chambers*, 883 S.W.2d at 654). However, the simple fact that an employee has a general duty not to commit

10

wrongful acts in his official capacity will not render an act ministerial. *See Chambers*, 883 S.W.2d at 653. In other words, "[t]he test to determine whether a governmental employee's act is discretionary focuses on whether the employee is performing a discretionary function, not whether the employee has discretion to do an allegedly wrongful act when discharging that function." *Los Fresnos Consol. Indep. Sch. Dist. v. Southworth*, 156 S.W.3d 910, 917 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied) (citing *Chambers*, 883 S.W.2d at 653).

To establish good faith, the City must show that a reasonably prudent officer, under the same or similar circumstances, might have reached the same decision.[3] *See Riojas*, 640 S.W.3d at 541. The question is not what a reasonable officer would have done, but what a reasonable officer could have believed. *Id.* If the officers establish good faith, the plaintiff must offer evidence that no reasonable officer in the same or similar circumstance could have believed that his conduct was justified. *Id.* It is not enough to show that a reasonable officer could have reached a different decision. *Id.* An official can act negligently and still meet the test for good faith. *Chambers*, 883 S.W.2d at 655.

## B.    Analysis

### 1.    Scope of Authority

There is no dispute that Officers Vazquez and Luna-Garcia were acting within the scope of their authority at all pertinent times. The evidence establishes that both officers were on duty and were acting in response to a report of criminal activity. The officers were discharging their assigned duties pertaining to the arrest and supervision of Sandoval.

---

[3] Because appellees do not complain of any officer actions related to the pursuit of Sandoval, the need versus risk balancing assessment which is required in high-speed pursuit cases does not apply. *See City of San Antonio v. Riojas*, 640 S.W.3d 534, 540 (Tex. 2022).

11

*See id.* at 658 (holding defendant officers were within the scope of their authority while conducting a high-speed chase of a suspect because each was on duty, in a squad car, and pursuing a suspect).

## 2. Discretionary Duty

The City argues that the officers were performing a discretionary duty because they were obligated to use their judgment and discretion in how to monitor Sandoval. The City maintains that officers in general are required to use their discretion when transporting arrestees and when and how often to monitor an arrestee during transport. Appellees respond that the officers were performing ministerial functions because CCPD's applicable policies do not leave any room for interpretation. Appellees cite the following CCPD policies:

> Arresting officers . . . are responsible for prisoner welfare and property until the prisoner is officially accepted by the City Detention Center.
>
> Officers transporting a prisoner from the scene of an arrest . . . assume the responsibility for compliance with this policy[. . . .]
>
> Under ordinary circumstances, all prisoners shall be handcuffed with their hands behind them.
>
> Officers shall operate official vehicles carefully and prudently.

We disagree that CCPD's policies rendered the officers' actions ministerial. CCPD policy explicitly provides for discretion in whether to handcuff a prisoner at all: "Possible exceptions may include . . . [a]ny other prisoner which the officer may have a specific, articulable reason for not handcuffing." In any event, none of the policies cited by appellees directly address the manner in which an officer is to monitor prisoners during transport. Regarding the transportation of prisoners more generally, these policies clearly require officers to exercise personal deliberation and judgment. *See Jenkins*, 363 S.W.3d

12

at 814; *see also City of Coppell v. Waltman*, 997 S.W.2d 633, 637 (Tex. App.—Dallas 1998, pet. denied) (interpreting policy requiring the constant supervision of a prisoner and concluding that "[t]he manner in which the dispatcher monitored the prisoner while performing her other duties was subject to personal deliberation, decision, and judgment"). Finally, the City presented evidence that there was no policy requiring officers to remove the key from the ignition when leaving a vehicle with an arrestee secured in the rear cabin. To the contrary, the evidence showed that it was consistent with CCPD practice to leave the vehicle running so that adequate temperature and ventilation could be maintained for the arrestee. We conclude that the evidence establishes that Officers Vasquez and Luna-Garcia were performing discretionary functions at all relevant times pertaining to their interactions with Sandoval. *See Jenkins*, 363 S.W.3d at 814.

### 3. Good Faith

The City argues that the officers were acting in good faith, citing evidence that Sandoval was properly handcuffed and secured in the backseat of a patrol vehicle that was specifically designed to secure arrestees. In arguing to the contrary, appellees rely on the officers' failure to notice that Sandoval was improperly restrained prior to Officer Vasquez leaving the vehicle with the engine running.

Rodriguez, the City's expert witness, opined that a prudent law enforcement officer could have believed the following:

Sandoval was properly restrained with the handcuffs behind his back[;]

[Sandoval] was properly secured considering all of the restraining and security procedures undertaken[;]

[T]here was no reason to do anything other than drive off [upon entering the patrol unit with Sandoval in the backseat;]

13

[T]here was no special need to continuously monitor Sandoval, versus checking vehicular and pedestrian traffic while driving[;]

[T]here was no reason to suspect that Sandoval would attempt to escape[] or succeed in escaping, after he was restrained with numerous security devices in place[; and]

[L]eaving the patrol car on, for the purposes of providing the appropriate environmental temperature for Sandoval, was reasonable and justified[.]

Rodriguez further opined that Officer Luna-Garcia's actions "were consistent with the actions of a reasonable and well-trained law enforcement officer." Several CCPD officers testified that Officers Vasquez and Luna-Garcia acted in compliance with CCPD procedures. We conclude that the City has established that reasonably prudent officers, under the same or similar circumstances, could have believed that their actions were justified. *See Riojas*, 640 S.W.3d at 541.

To create a fact issue on this element, appellees were required to offer evidence that no reasonable police officer in the officers' position could have believed that the facts were such that they justified the challenged actions. *See id.* at 542. Appellees rely on Montgomery's expert report in this regard. Montgomery opines that Officers Vasquez and Luna-Garcia did not act "in concert with generally accepted police practices" with respect to their supervision of Sandoval. Montgomery cites the officers' failure to monitor Sandoval and leaving him "unattended." Montgomery also cites Officer Luna-Garcia's failure to immediately remove the keys from the ignition upon arrival at Officer Vasquez's patrol car and her later failure to employ her Taser as Sandoval was maneuvering through the plexiglass opening.

Montgomery's conclusory statement that "[r]easonable police officers would not have performed in that manner" does not create a fact issue as to whether Officers

14

Vasquez and Luna-Garcia acted in good faith. The test for good faith turns not on "what a reasonable person *would have done*," but rather on "what a reasonable [person] *could have believed*." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004). (quoting *Telthorster*, 92 S.W.3d at 465). At best, Montgomery's report shows only that the officers may have been negligent or that reasonably competent officers could disagree as to the appropriate manner of supervising and transporting Sandoval. *See Chambers*, 883 S.W.2d at 655 ("The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently."). It does not establish that *no* reasonable officer could have believed that the officers' conduct was justified under the same or similar circumstances. *See Telthorster*, 92 S.W.3d at 466–67 (holding that the plaintiff did not controvert good faith element where its evidence was conclusory); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466–67 (Tex. 1997) (explaining that an expert witness's conclusory statement that a reasonable officer could not have taken some action will not raise a fact issue to defeat summary judgment if the expert fails to "address what a reasonable officer *could have believed* under the circumstances"); *Padilla v. Mason*, 169 S.W.3d 493, 507 (Tex. App.—El Paso 2005, pet. denied) (concluding that expert witness affidavit concerning the use of force failed to create a fact issue on whether an officer acted in good faith). We conclude that the evidence established good faith and that appellees have failed to present evidence creating a fact issue as to this element.

### 4.    Summary

The City presented evidence establishing that its officers were entitled to official immunity from appellees' claims. Appellees failed to respond with evidence creating a

15

fact issue regarding any element of the defense. *See Garcia*, 372 S.W.3d at 635. Further, because the City's officers are officially immune, its governmental immunity has not been waived. *See DeWitt*, 904 S.W.2d at 653. Accordingly, we conclude the trial court erred in denying the City's plea to the jurisdiction. We sustain the City's second issue. We need not address the City's remaining issues because this issue is dispositive. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

We reverse the trial court's judgment and render a judgment dismissing appellees' suit for want of jurisdiction.

L. ARON PEÑA JR.<br>
Justice

Delivered and filed on the
16th day of November, 2023.