

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00232-CV

BONNIE GORMAN                                                    APPELLANT

V.

ARTHANARI MURALI AND JOAN                                       APPELLEES
MURALI

----------

## FROM THE 393RD DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 16-02617-393

----------

## MEMORANDUM OPINION[1]

----------

Appellant Bonnie Gorman appeals from the trial court's summary judgment

entered in favor of appellees Arthanari Murali[2] and Joan Murali (collectively, the

Muralis) on Bonnie's claims for strict liability, premises liability, and negligence.

---

[1]*See* Tex. R. App. P. 47.4.

[2]Bonnie named Arthanari Murali as a defendant in her suit; however, Appellees notified the trial court and this court that his name actually is Murali Arthanari. Because all documents filed in the trial court and this court referred to him as Arthanari Murali, we will do so as well.

Because Bonnie failed to raise a genuine issue of material fact on her claims, we affirm the trial court's summary judgment.

## I. BACKGROUND

In December 2014, Joan asked Brianna Gorman, who lived next door to the Muralis with her parents Bonnie and Ted Gorman, if Brianna could take care of the Muralis' dog Oreo while Joan and her husband Arthanari were out of town. At the time, Oreo was a nine-year-old terrier who became the Muralis' house pet when they brought him home at eight weeks old. Brianna agreed to feed Oreo, let him outside in the morning, and let him back inside in the evening to sleep. Because Brianna would also be busy with her job as a waitress, Bonnie told Joan that she would take care of Oreo if Brianna was at work. The day before the Muralis left, Joan asked Bonnie and Brianna to come over so Joan could explain what Oreo needed.[3] Brianna was "very friendly" with Oreo, petting him; but Brianna later stated that she got a feeling, based on how Joan "introduced Oreo to [her]," that Joan "was concerned about how the dog might act toward [Brianna] because [she] was a stranger."

When Brianna began to care for Oreo, she noted that he "seemed jumpy," which made her "nervous." Bonnie helped Brianna with Oreo without incident, but Bonnie's husband Tim stated that once when he went to the Muralis' home with Bonnie to feed Oreo, Oreo growled at him. He admitted that Oreo "showed

---

[3]Joan averred that only Brianna came over to talk about Oreo's care, but Bonnie stated that she went to Appellees' home with Brianna to meet Oreo.

no aggression toward Bonnie." Indeed, Bonnie stated that Oreo did not act aggressively, growl, or bark when she took care of him. On the night of December 23, 2014, Bonnie went to the Muralis' home to let Oreo in for the night. She let Oreo in through the back door and began rubbing his stomach when he rolled onto his back. When Bonnie began to stand up to put Oreo in his crate for the night, Oreo "lunged" and bit the left side of her face below her eye. Bonnie required 120 stitches to close the wound. Ted was able to get Oreo in his crate later that night, but Oreo "was growling and showing [his] teeth."

Bonnie filed suit against the Muralis, raising claims for negligence, premises liability, and strict liability. The Muralis moved for a no-evidence and traditional summary judgment on each of Bonnie's claims mainly arguing that there was no evidence or no genuine issue of material fact that the Muralis knew or should have known of Oreo's dangerous tendencies, which was an essential element of each claim. *See* Tex. R. Civ. P. 166a(b), (c), (i). In response, Bonnie pointed to Ted's affidavit in which he asserted that he "personally had reservations" about Oreo because he "would aggressively bark at the fence when [Ted] was working in the back yard." Ted stated that this barking was "constant" and "vicious[]" and occurred when he knew the Muralis "were there to see the dog's behavior." This evidence combined with Joan's insistence that Oreo meet Brianna, Bonnie argued, was at least circumstantial evidence of Oreo's dangerous propensity that defeated the Muralis' summary-judgment motion.

3

The trial court granted the Muralis a no-evidence summary judgment on Bonnie's strict-liability claim and a traditional summary judgment on Bonnie's premises-liability and negligence claims. Bonnie appeals and argues that the trial court erred by granting the Muralis judgment as a matter of law based on the evidence she proffered raising genuine issues of material fact.

## II.  PROPRIETY OF SUMMARY JUDGMENT

### A.  STANDARDS OF REVIEW

We review a grant of summary judgment de novo. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). In a traditional motion for summary judgment, a movant must state specific grounds, and a defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment. *Id.*; *see also* Tex. R. Civ. P. 166a(c).  In a no-evidence motion for summary judgment, the movant contends that no evidence supports one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014); *see also* Tex. R. Civ. P. 166a(i). The trial court must grant the no-evidence motion unless the nonmovant raises a genuine issue of material fact on each challenged element. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

### B.  DANGEROUS PROPENSITY

Each of Bonnie's claims against the Muralis required proof of some variant of what we will call the dangerous-propensity element.  To avoid a no-evidence

4

summary judgment on her strict-liability claim, Bonnie had to proffer more than a scintilla of evidence raising a genuine issue of material fact that Oreo had dangerous propensities abnormal to his class—domesticated animal—that the Muralis knew or should have known about. *See Marshall v. Renne*, 511 S.W.2d 255, 258 (Tex. 1974); *Rodriguez v. Haddock*, No. 2-01-386-CV, 2003 WL 1784923, at *2 (Tex. App.—Fort Worth Apr. 3, 2003, no pet.) (mem. op.). An essential element of Bonnie's premises-liability claim was that the Muralis had actual or constructive knowledge of an alleged dangerous condition, which Bonnie alleged was the presence of Oreo who had dangerous propensities. *See Mattox v. Timmerman*, No. 03-13-00107-CV, 2013 WL 4516125, at *3 (Tex. App.—Austin Aug. 22, 2013, no pet.) (mem. op.) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000)). Finally, negligence requires evidence that the Muralis breached their duty to exercise reasonable care to prevent Oreo from injuring others; but because any duty requires foreseeability and proximate cause, the Muralis had no duty to warn or make their premises safe for an invitee[4] like Bonnie if they had no knowledge that Oreo had viscous or dangerous propensities. *See Bolton v. Fisher*, 528 S.W.3d 770, 775–76 (Tex. App.—Texarkana 2017, pet. filed); *City of Hous. v. Jenkins*, 363 S.W.3d 808, 816 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Muela v. Gomez*, 343 S.W.3d

---

[4]All parties agree that Bonnie was an invitee.

5

491, 497 (Tex. App.—El Paso 2011, no pet.); *Searcy v. Brown*, 607 S.W.2d 937, 941 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).

To meet the dangerous-propensity element of each of her claims, Bonnie relies on Ted's affidavit in which he contended that Oreo's "constant" and "vicious[]" barking at the fence between the Gormans' and Muralis' back yards raised a fact issue. She also points to Brianna's assertion that Joan seemed "concerned" about Oreo's "jumpy" behavior when Brianna went to the Muralis' home to meet Oreo, causing Brianna to not play or pick up Oreo when she fed him, and to Oreo's growling at Ted both before and after the attack. But the only evidence that Oreo growled at Ted did not occur in the presence of the Muralis and, therefore, could not have been the basis of any knowledge they possessed. Oreo was in his own home at the time of the attack and had never been aggressive before. *See Dunnings v. Castro*, 881 S.W.2d 559, 561 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (op. on reh'g); *Searcy*, 607 S.W.2d at 941. Indeed, Bonnie stated during her deposition that she was not aware of any aggressive behavior or other attacks by Oreo before he bit her. Joan agreed, asserting that she had never known Oreo to be aggressive, territorial, or threatening to strangers. Even though Tim averred that Oreo would aggressively bark at the fence separating the Muralis' and the Gormans' back yards when Tim would mow, none of these barking incidents, which occurred when Oreo was in the Muralis' back yard, resulted in an attack or disputed Joan's and Bonnie's statements that Oreo did not have dangerous propensities. Oreo only barked—

6

as dogs do. There is no evidence that the Muralis knew or had reason to know that Oreo had dangerous propensities that are abnormal when compared to other dogs because he barked at the fence. Appellant's evidence is insufficient to raise a genuine issue of material fact that Oreo had dangerous propensities abnormal for a domesticated animal, which the Muralis knew or should have known about. *See, e.g.*, *Castrejon v. Horton*, No. 14-16-00520-CV, 2017 WL 4797730, at *5–7 (Tex. App.—Houston [14th Dist.] Oct. 24, 2017, no pet.) (mem. op.); *Williams v. Sable*, No. 14-09-00806-CV, 2011 WL 238288, at *4–5 (Tex. App.—Houston [14th Dist.] Jan. 25, 2011, no pet.) (mem. op.); *Jones v. Gill*, No. 02-03-0298-CV, 2005 WL 503182, at *4 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.) (mem. op.); *Rodriguez*, 2003 WL 1784923, at *2–3; *Gill v. Rosas*, 821 S.W.2d 689, 690 (Tex. App.—El Paso 1991, no writ). We overrule Bonnie's issue.

## III. CONCLUSION

Because the dangerous-propensity element was necessary to prove each of Bonnie's claims and because she did not raise a genuine issue of material fact as to this essential element, the trial court did not err by granting summary judgment in favor of the Muralis. We affirm the trial court's order granting summary judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GABRIEL, PITTMAN, and BIRDWELL, JJ.

DELIVERED:  June 7, 2018